FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**  11 NOV 10 AM 10: 26
**TAMPA DIVISION**

MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

WILLIAM MELVIN,                              )
                                             )
      Plaintiff,                       )
                                             )     Case No. 8:11-CV-2542-T-24TGW
v.                                           )
                                             )     DEMAND FOR JURY TRIAL
                                             )
BLITZ U.S.A., INC.; LAM 2011                 )
HOLDINGS, LLC, f/k/a BLITZ                   )
HOLDINGS, LLC; KINDERHOOK                    )
INDUSTRIES, LLC; KINDERHOOK                  )
CAPITAL FUND II, L.P.; BLITZ                 )
ACQUISITION HOLDINGS, INC.;                  )
BLITZ ACQUISITION, LLC;                      )
BLITZ RE HOLDINGS, LLC.;                     )
F3 BRANDS, LLC;                              )
WAL-MART STORES, INC.;                       )
WAL-MART STORES EAST, INC.;                  )
WAL-MART STORES EAST, L.P.; and              )
DISCOVERY PLASTICS, LLC,                     )
                                             )
      Defendants.                      )
_____             )

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff, WILLIAM MELVIN ("Plaintiff"), and sues Blitz U.S.A., Inc.

("Blitz"); LAM 2011 Holdings, LLC, f/k/a Blitz Holdings, LLC; Kinderhook Industries, LLC;

Kinderhook Capital Fund II, L.P.; Blitz Acquisition Holdings, Inc.; Blitz Acquisition, LLC;

Blitz RE Holdings, LLC; F3 Brands, LLC; Wal-Mart Stores, Inc.; Wal-Mart Stores East,

Inc.; Wal-Mart Stores East, L.P. (collectively "Wal-Mart"); and Discovery Plastics, LLC

("Discovery Plastics"), and alleges the following:

### INTRODUCTION

On or about October 11, 2009, a gas storage container (hereinafter "can" or

"subject gas can") manufactured by Blitz and sold by Wal-Mart exploded, causing



1

Plaintiff to suffer severe burns. This action is brought against the Defendants to recover all damages to which Plaintiff is entitled as a result of the severe injuries and damages he sustained as set forth herein.

## PARTIES

1.      Plaintiff is an individual and resident of the State of Florida who resides in Polk County, Florida.

2.      Defendant Blitz U.S.A., Inc. ("Blitz") is an Oklahoma corporation that maintains its principal place of business in the State of Oklahoma. Blitz may be served with process by serving its registered agent, Rocky Flick, Blitz U.S.A., Inc., 404 26th Avenue Northwest, Miami, Oklahoma 74354-2206.

3.      Defendant LAM 2011 Holdings, LLC (f/k/a Blitz Holdings, LLC) is a Delaware limited liability company that may be served with process by serving its registered agent, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

4.      Defendant Kinderhook Industries, LLC is a Delaware limited liability company which maintains its principal place of business in the State of New York and may be served with process by serving its registered agent, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

5.      Defendant Kinderhook Capital Fund II, L.P. is a Delaware limited partnership which maintains its principal place of business in the State of New York and may be served with process by serving its registered agent, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

6.     Defendant Blitz Acquisition Holdings, Inc. is a Delaware corporation that may be served with process by serving its registered agent, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

7.     Defendant Blitz Acquisition, LLC is a Delaware limited liability company that may be served with process by serving its registered agent, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

8.     Defendant Blitz RE Holdings, LLC is a Delaware limited liability company that may be served with process by serving its registered agent, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

9.     Defendant F3 Brands, LLC is a Delaware limited liability company that may be served with process by serving its registered agent, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

10.     Defendant Wal-Mart Stores, Inc. ("Wal-Mart") is a Delaware corporation that does business in the State of Florida and which maintains its principal place of business in the State of Arkansas. Wal-Mart Stores, Inc. may be served with process by serving its registered agent, CT Corporation System, 1200 South Pine Island Road, Plantation, Florida 33324.

11.     Defendant Wal-Mart Stores East, Inc. ("Wal-Mart") is an Arkansas corporation that does business in the State of Florida and which maintains its principal place of business in the State of Arkansas. Wal-Mart Stores East, Inc. may be served with process by serving its registered agent, CT Corporation System, 1200 South Pine Island Road, Plantation, Florida 33324.

12.     Defendant Wal-Mart Stores East, L.P. ("Wal-Mart") is a Delaware limited partnership that does business in the State of Florida and which maintains its principal place of business in the State of Arkansas. Wal-Mart Stores East, L.P. may be served with process by serving its registered agent, CT Corporation System, 1200 South Pine Island Road, Plantation, Florida 33324.

13.     Defendant Discovery Plastics, LLC ("Discovery Plastics") is a Kansas limited liability company that has engaged in business in the State of Florida but maintains its principal place of business in Miami, Oklahoma. Discovery Plastics may be served with process by serving its registered agent, George W. Foster, 3607 28th Ave. NE, Miami, Oklahoma 74354.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). The matter in controversy exceeds the sum of Seventy Five Thousand Dollars ($75,000.00), exclusive of interest and costs, and diversity of citizenship exists between Plaintiff and Defendants.

15.     Venue is proper in the District Court of the United States District Court for the Middle District of Florida, Tampa Division pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claim occurred in whole or in part within this District.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

16.     Blitz is in the business of designing, marketing, manufacturing and selling portable plastic gasoline cans.

4

17.     Blitz designed, manufactured, marketed and sold a model of gas can known as the Blitz self venting gas can (hereinafter "can" or "subject gas can").

18.     Plaintiff's sister purchased a five gallon self venting gas can from Wal-Mart at its store in Winter Haven, Florida.  The can, which contained gasoline, was stored in a shop at the family's residence in Winter Haven.  The yellow cap on the can had been lost prior to October 11, 2009, and gas had been in the can with the cap off for approximately two to four weeks.

19.     The can was sold by Blitz to Wal-Mart for distribution in Florida.

20.     On or about October 11, 2009, Plaintiff went to mow the grass on his property with his riding lawnmower.  After mowing a few strips of grass, the mower ran out of gas.

21.     Plaintiff pushed the mower to the door of the shop, reached into the shop to pick up the Blitz gas can and started filling the tank.

22.     While Plaintiff was filling the tank, he saw a spark by the lawn mower engine just before the gas can which he was holding violently exploded.

23.     The explosion blew Plaintiff through the door into the shop.  Plaintiff then ran out and turned to look at the shop, the side of which was on fire.

24.     Although Plaintiff could feel his face and arms burning, in shock, he started to move the lawn mower away from the fire but his entire body and clothing became engulfed in flames.

25.     Plaintiff managed to strip off his clothing and extinguish the fire on his body.

26.     Plaintiff was burned over 33 percent of his body, including third degree burns. He was conscious and alert experiencing excruciating pain and suffering while waiting for help to arrive. Plaintiff spent more than two weeks in the hospital burn unit, suffering through surgeries, skin grafts and debridement procedures and is permanently scarred and disfigured.

### CLAIMS FOR RELIEF

### COUNT I – STRICT LIABILITY
### AS TO BLITZ ONLY

27.     Plaintiff re-alleges and incorporates paragraphs 1-26 as if fully pleaded herein.

28.     Blitz is engaged in the business of designing, manufacturing, assembling, marketing, distributing, and selling the can to consumers within the stream of commerce. Blitz designed, manufactured, assembled, marketed, distributed and sold the can that caused Plaintiff's injuries.

29.     Blitz expected the can to ultimately reach the residential consumer and/or users without substantial change in the condition in which it was originally sold. The can did in fact reach Plaintiff without a substantial change in the condition in which it was originally sold by Blitz and unexpectedly failed under ordinary and foreseeable use. The can was not modified or altered after it left Defendants' control, and Plaintiff was utilizing the can in a foreseeable and reasonable manner in which the can was reasonably expected to be used.

30.     At the time the can left Defendants' control, and at all times complained of herein, safer alternative designs were available that would have eliminated the risk of

the subject gas can exploding without substantially impairing the usefulness and intended purpose of the product.

31.     The can was defective and unsafe for its intended purposes at the time it left Defendants' control in that the design failed to include a flame arrestor device, which is a necessary safety device that would have prevented Plaintiff's catastrophic burn injuries.

32.     Blitz failed to act as a reasonable manufacturer by failing to implement a feasible alternative design to prevent foreseeable injuries and deaths from the lack of a flame arrestor on its gas cans.

33.     Blitz failed to act as a reasonable manufacturer by failing to produce a gas can closure that would safely store gasoline in the can. The yellow cap on the Blitz can suffered from defects which caused and/or contributed to cause the cap to crack and/or to fall off and be lost subjecting the stored gasoline to evaporation which increased the risk of explosion.  Blitz continued to sell its cans with the defective yellow closures despite Blitz's knowledge of this defect.

34.     Blitz knew or should have known of the can's susceptibility to flashback and explosion, which occurs when gasoline vapors outside the can ignite and the flames follow the vapor trail back into the can, causing an explosion of the can and a release of burning gasoline and vapors and/or a flame thrower effect where burning vapors and liquid explode out of the can.

35.     The can was unreasonably dangerous and defective in its design and manufacture because it did not incorporate a flame arrestor, a technologically and economically feasible safety device that would have prevented the explosion in the

7

present case, and because its closure system did not work appropriately to seal the can, thereby increasing the risk of an explosion. Blitz failed to warn Plaintiff of the defective condition of the can and that cans such as the one Plaintiff purchased may explode if there is a flashback that follows the gasoline vapors back to the can.

36.    A flame arrestor, sometimes called a flame arresting screen, flash arrestor or spark arrestor, is a small metal device that is placed in a container's openings and allows liquids to flow out of the container but prevents the flashback of flames back into the container. The device consists of either a perforated metal disk or a wire mesh screen.

37.    The efficacy of flame arrestors has been known to the gasoline manufacturing industry for decades. Manufacturers of portable gas cans for commercial use have been aware of their existence and have included them in their design since before the 1950's. In the 1970's, flame arrestors were incorporated into cans marketed to the general public.

38.    For more than a quarter century, the utility and efficacy of flame arrestors has been a topic of discussion in the media and national publications and the subject of numerous lawsuits filed by consumers, users, and bystanders who have been burned and/or killed in encounters with portable gas cans that were not equipped with the device.

39.    Consequently, Blitz has known, or should have known, for decades prior to this incident that gas cans without flame arrestors were susceptible to flashback (i.e., when gasoline vapors outside the container ignite, the flames can follow the vapor trails

8

back inside the container causing it to explode and/or spew flames and burning gasoline).

40. Without the inclusion of a flame arrestor, the foreseeable risk of injury and/or death associated with the use of the subject gas can far exceeded any utility and/or benefits associated with its design.

41. Nevertheless, despite the wealth of available scientific knowledge, Blitz has made, and continues to make, a conscious, willful, wanton and reckless decision to endanger the safety of consumers, users, and bystanders by refusing to incorporate a well-known safety device into its portable gas cans, despite the fact that this safety device is economically and technologically feasible.

42. The can designed, manufactured, assembled, marketed, distributed, and sold by Blitz was defective and/or unreasonably dangerous when sold.

43. The can designed, manufactured, assembled, marketed, distributed and sold by Blitz was the direct and proximate cause of Plaintiff's injuries and damages.

44. As a direct and proximate result of Blitz's acts and/or omissions in the design, manufacture, assembly, marketing, distribution and sale of the can as alleged, Plaintiff suffered severe personal injuries, including, but not limited to, severe burns, severe physical pain and suffering, permanent scarring, psychological impairment, and emotional distress.

45. As a direct and proximate result of Blitz's acts and/or omissions in the design, manufacture, assembly, marketing, distribution and sale of the can as alleged, Plaintiff has suffered reasonable and necessary medical expenses in the past and will

incur reasonable and necessary medical expenses in the future in an amount which is currently unknown but which will be pleaded when ascertained.

46.     As a direct and proximate result of Blitz's acts and/or omissions in the design, manufacture, assembly, marketing, distribution and sale of the can as alleged, Plaintiff has suffered lost income and loss of earning capacity in amounts which are currently unknown but which will be pleaded when ascertained.

47.     As a direct and proximate result of Blitz's acts and/or omissions in the design, manufacture, assembly, marketing, distribution and sale of the can as alleged, Blitz is liable to Plaintiff pursuant to Section 402A of the Restatement (Second) of Torts (1965).

48.     In order to avoid liability in civil cases for damages such as this instant case, Blitz has destroyed or otherwise spoliated evidence which would tend to prove plaintiffs' allegations in this and other similar cases that have been litigated in other states. Based upon the entirety of Blitz's actions as alleged in this paragraph and those preceding it, Plaintiff reserves the right to amend the Complaint to request an award of punitive damages once discovery is completed.

<u>**COUNT II – NEGLIGENCE**</u>
<u>**AS TO BLITZ ONLY**</u>

49.     Plaintiff re-alleges and incorporates paragraphs 1-26 as if fully pleaded herein.

50.     Blitz owed consumers and/or foreseeable users, including Plaintiff, the duty of reasonable care in its design, manufacture, assembly, marketing, distribution and sale of the subject gas can.

10

51.     Blitz ignored and/or breached that duty by its following negligent acts and/or omissions:

      A. Failed to design and produce a reasonably safe can;

      B. Designed, manufactured, assembled, marketed, distributed, and sold a can that was defective;

      C. Placed into the stream of commerce a can that was defective in design;

      D. Placed into the stream of commerce a can that was defective in that it failed to contain adequate warnings and instructions;

      E. Placed into the stream of commerce a can that was unfit for its intended use;

      F. Placed into the stream of commerce a can that was likely to and did cause injury during its ordinary use;

      G. Placed into the stream of commerce a can that contained manufacturing defects;

      H. Failed to incorporate a flame arrestor in the product design;

      I. Failed to properly test its can and prototypes thereof with flame arresting material;

      J. Failed to provide adequate instructions and warnings with the can after learning, knowing, or having reason to know, of the defects existing in the can that rendered it unreasonably dangerous for its intended use;

      K. Failed to provide adequate warnings that would be reasonably calculated to inform consumers and/or users of the nature and extent of the dangers involved in using or misusing its product;

L. Failed to actively seek information regarding incidents in which consumers, users, and bystanders were injured and/or killed when they encountered cans such as the one that injured Plaintiff;

M. Failed to actively seek information regarding incidents involving explosion and/or internal combustion of its cans;

N. Failed to provide post-sale warnings after learning, knowing, or having reason to know of the defects existing in the can that rendered it unreasonably dangerous for its intended use;

O. Failed to take subsequent remedial measures or to recall the can after learning, knowing, or having reason to know of the defects existing in the can that rendered it unreasonably dangerous for its intended use;

P. Ignored and/or failed to investigate scientific, technological and industry information and studies regarding the efficacy of flame arrestors for the can;

Q. Ignored and/or failed to investigate other lawsuits and/or similar incidents involving similar claims and incidents in which consumers, users, children and/or bystanders were severely and routinely burned and/or killed when encountering the can;

R. Failed to report incidences and lawsuits involving other consumers, users, and bystanders who have been burned and/or killed when encountering the can to the Consumer Product Safety Commission;

S. Failed to warn that the can was not equipped with safety devices;

T. Sold the can when it knew it posed an unreasonable risk of flammable vapor ignition, flashback and explosion to users beyond that understood or contemplated by the average reasonable consumer, and the risks associated with this design outweighed its utility;

U. Blitz knew or should have known that consumers would use their can(s) to fill the gas tank of a lawnmower with gasoline, creating an unreasonable and unexpected hazard of vapor ignition and resulting fire, without appropriate design features to prevent ignition and flashback;

V. Blitz knew or should have known that there were design and manufacturing defects in the closures on its can that caused it to fall of and/or be lost or allowed users to fail to appropriately secure it, resulting in an open or improperly sealed can, which increased the likelihood of an explosion;

W. On at least two occasions, Blitz halted projects to equip its can with flame arrestors for financial and strategic legal reasons as opposed to safety considerations;

X. Blitz spoliated evidence which would tend to prove Plaintiff's allegations that Defendants are liable to Plaintiff.

52.     As a direct and proximate result of Blitz's negligent acts and/or omissions, the can that caused Plaintiff's injuries was placed into the stream of commerce, in a defective and unreasonably dangerous condition, acting with complete indifference to, and in willful, conscious disregard for the safety of Plaintiff, and other foreseeable plaintiffs. After discovery is conducted, Plaintiff reserves the right to seek leave of the

13

Court to amend his Complaint to seek punitive damages against Blitz for gross negligence.

53.     Plaintiff's injuries and the manger in which they occurred were reasonably foreseeable to Blitz, which had actual and/or constructive knowledge from within the industry, national publications, media reports and prior claims and lawsuits, that consumers, users, children and bystanders were being routinely burned and/or killed when encountering their portable gas cans.

## COUNT III – BREACH OF WARRANTY
## AS TO BLITZ ONLY

54.     Plaintiff re-alleges and incorporates in paragraphs 1-26 as if fully pleaded herein.

55.     Blitz, by and through the sale of its portable gas cans, expressly and impliedly warranted to the consumer and/or foreseeable users, such as Plaintiff, that the container was fit for its ordinary and foreseeable purposes.

56.     Plaintiff made ordinary use of the container in reliance on said warranties.

57.     Contrary to said warranties, the portable gas can was defective and unfit for its ordinary and foreseeable purposes, rendering it unreasonably dangerous.

58.     Blitz breached its express and implied warranties by one or more of the following respects, among others:

   A. Failure of the gas can itself and by improper marketing;

   B. Failed to equip the gas can with a flame arrestor and/or other safety devices to make the gas can safe for its foreseeable environment;

   C. Failed to provide adequate warnings about the inherent dangers involved in the use of gasoline and its gas cans;

14

D. Failed to warn that the gas can was not equipped with a flame arrestor or other safety devices;

E. The gas can, as sold, posed a risk of flammable vapor ignition, flashback and explosion to users beyond that understood or contemplated by the average reasonable consumer, and the risks associated with its design outweighed its utility;

F. Blitz knew or should have known of feasible alternative designs that would have significantly reduced and/or eliminated the risk of flammable vapor ignition and failed to employ said design alternatives to make it safe for its foreseeable environment;

G. Blitz knew or should have known that consumers would use gas cans to fuel lawnmowers, creating an unreasonable and unexpected hazard of vapor ignition and resulting fire, without appropriate design features to prevent flashback;

H. Failed to assure that the product design included a flame arrestor;

I. Failed to protect foreseeable users of the gas can from the dangers present in the use of such container, which dangers Blitz knew or should have known existed;

J. Failure to recall and/or repair the product;

K. Placed on the market a gas can which was unfit for its intended use;

L. Placed on the market a gas can which was not safe for the ordinary purpose for which it was sold.

15

59.    Plaintiff's injuries and the manner in which they occurred were reasonably foreseeable to Blitz, which had actual and/or constructive knowledge from the industry, national publications, media reports, and prior claims and lawsuits, that consumers, users, children and bystanders were being routinely burned and/or killed when encountering their portable gas cans.

60.    As a direct and proximate result of said breach of warranty, Plaintiff suffered the injuries and harms outlined in this Complaint.

61.    As such, Blitz is liable pursuant to Florida Revised Statutes §§ 672.313 and 672.314.

## COUNT IV – PIERCING THE CORPORATE VEIL
## AS TO BLITZ U.S.A., INC.; LAM 2011 HOLDINGS, LLC, F/K/A BLITZ HOLDINGS, LLC; KINDERHOOK INDUSTRIES, LLC; KINDERHOOK CAPITAL FUND II, L.P.; BLITZ ACQUISITION HOLDINGS, INC.; BLITZ ACQUISITION, LLC; BLITZ RE HOLDINGS, LLC; F3 BRANDS, LLC

62.    Plaintiff re-alleges and incorporates the allegations of paragraphs 1-26 as if fully pleaded herein.

63.    On or about September 21, 2007, the Elmburg family sold Defendant Blitz U.S.A., Inc. to an investment group comprised of Kinderhook Industries, LLC, which is a New York-based private equity firm, and members of Blitz senior leadership including Rocky J. Flick, Blitz's current CEO and director, Chuck Neal, Blitz's current director, and Jay Pearson, Blitz's current director.

64.    Coinciding with or sometime after the sale of Blitz U.S.A., Inc. to Kinderhook Industries, LLC and members of Blitz U.S.A.'s senior management, a complicated and opaque corporate ownership structure was created by the new owners consisting of the defendant Delaware limited liability companies, corporations, and

limited partnerships, Blitz Acquisition, LLC, Blitz RE Holdings, LLC, Blitz Acquisition Holdings, Inc., LAM 2011 Holdings, LLC (f/k/a Blitz Holdings, LLC), Kinderhook Capital Fund II, LP, and Kinderhook Industries, LLC.

65.     Defendant Blitz U.S.A., Inc. is currently a wholly owned subsidiary of Blitz Acquisition, LLC. Defendant Blitz RE Holdings, LLC is a wholly owned subsidiary of Blitz Acquisition, LLC. Defendant Blitz Acquisition, LLC is a wholly owned subsidiary of Blitz Acquisition Holdings, Inc. Defendant Blitz Acquisition Holdings, Inc. is a wholly owned subsidiary of LAM 2011 Holdings, LLC (f/k/a Blitz Holdings, LLC). Defendant LAM 2011 Holdings, LLC (f/k/a Blitz Holdings, LLC) is a wholly or partially owned subsidiary of Defendant Kinderhook Capital Fund II, LP. Defendant Kinderhook Capital Fund II, LP is a wholly or partially owned subsidiary of Defendant Kinderhook Industries, LLC.

66.     The Defendants' corporate structure is a sham created and used to perpetuate a fraud on Plaintiff and other plaintiffs in gas can product liability lawsuits by transferring substantial, valuable assets out of Blitz U.S.A., Inc. and purposefully keeping it grossly undercapitalized so that Plaintiff and other creditors will be unable to collect judgments.

67.     An entity is considered an alter ego of its parent or subsidiary where the companies have the same management, business operations or purposes, equipment and facilities, customers, management and supervision, and owners and where maintaining the fiction of separate corporate existence would sanction a fraud or promote injustice.

17

68.     At the time the Elmburg family sold Blitz U.S.A., Inc. to Defendant Kinderhook Industries, LLC, Kinderhook knew that Blitz had been sued by numerous individuals who claimed they had received devastating burn injuries and/or deaths in explosions of Blitz gas cans, and Kinderhook knew that there were numerous such lawsuits pending and that there was a great likelihood that there would be many more suits filed as a result of gas cans already sold.  In spite of this knowledge, Kinderhook on its own and through its sham subsidiaries proceeded with the purchase under a scheme to immediately and in the future remove substantial valuable assets into newly formed entities for the purpose of preventing injured plaintiffs from recovering on their claims.

69.     Defendants Kinderhook Industries, LLC, LAM 2011 Holdings, LLC (f/k/a Blitz Holdings, LLC) and Kinderhook Capital Fund II, LP exercise complete dominion and control over the other subsidiary entities listed above and Blitz U.S.A., Inc. such that the subsidiaries are the alter egos of the parent companies, the parent companies are the alter egos of the subsidiaries, and they are the agents of and instrumentalities and conduits for one another.  Defendants' employees, officers, directors and agents are members of the Board of Directors and officers of Blitz U.S.A., Inc.

70.     Defendants Kinderhook Industries, LLC, LAM 2011 Holdings, LLC (f/k/a Blitz Holdings, LLC) and Kinderhook Capital Fund, II, LP have used their control to cause Defendant Blitz U.S.A., Inc. and their other subsidiary entities listed above to make transfers of assets and incur obligations to and between the various entities and/or to other unknown companies and individuals in order to leave Blitz U.S.A., Inc.

undercapitalized and insolvent and with actual intent to defraud Plaintiff and other creditors.

71.     Defendant F3 Brands, LLC was incorporated in Delaware on May 17, 2011 and was identified by Blitz U.S.A., Inc. on October 4, 2011 as a wholly owned subsidiary of Blitz U.S.A., Inc.

72.     Prior to October 4, 2011, Blitz identified F3 Brands, LLC as a wholly owned subsidiary of Blitz Acquisition Holdings, Inc.

73.     Since May 17, 2011, substantial assets consisting of Blitz U.S.A., Inc.'s non-gas can product lines, manufacturing equipment and other assets have been diverted and transferred to F3 Brands, LLC.

74.     On October 4, 2011, Blitz U.S.A., Inc. disclosed that it has transferred assets to Blitz Acquisition, LLC for the purpose of Blitz Acquisition, LLC's purchase of a Canadian company identified by Blitz as "Reliance Holdings."

75.     Prior to October 4, 2011, Blitz identified "Reliance Holdings" as a wholly owned subsidiary of Blitz Acquisition Holdings, Inc.

76.     Defendants have taken or caused to be taken the property of Blitz U.S.A., Inc., depriving Blitz of the means of paying its debts, enabling it to practically place itself beyond the reach of its creditors, and are thereby liable for Blitz's debts.

77.     Plaintiff seeks to pierce the corporate veil on the grounds of fraud and alter ego in order to hold each of these Defendant entities liable for any judgment Plaintiff may obtain against Blitz U.S.A., Inc.

## COUNT V – UNIFORM FRAUDULENT TRANSFER ACT
## FLA. STAT. ANN. §§ 726.101 – 726.201
## AS TO BLITZ U.S.A., INC.; LAM 2011 HOLDINGS, LLC, F/K/A BLITZ HOLDINGS, LLC; KINDERHOOK INDUSTRIES, LLC; KINDERHOOK CAPITAL FUND II, L.P.; BLITZ ACQUISITION HOLDINGS, INC.; BLITZ ACQUISITION, LLC; BLITZ RE HOLDINGS, LLC; F3 BRANDS, LLC

78.     Plaintiff re-alleges and incorporates the allegations of paragraphs 1-26 as if fully pleaded herein.

79.     Plaintiff is the creditor of Blitz U.S.A., Inc.

80.     The Defendants' corporate structure is a sham created and used to perpetuate a fraud on Plaintiff and other plaintiffs in gas can product liability lawsuits by transferring substantial valuable assets out of Blitz U.S.A., Inc. to the Defendants and others and purposefully keeping Blitz grossly undercapitalized so that Plaintiff and other creditors will be unable to collect judgments. Blitz U.S.A., Inc. has transferred assets and incurred obligations with the actual intent to hinder, delay and defraud Plaintiff and Blitz U.S.A., Inc.'s other debtors.

81.     On or about September 21, 2007, the Elmburg family sold Defendant Blitz U.S.A., Inc. to an investment group comprised of Kinderhook Industries, LLC, which is a New York-based private equity firm, and members of Blitz senior leadership including Rocky J. Flick, Blitz's current CEO and director, Chuck Neal, Blitz's current director, and Jay Pearson, Blitz's current director.

82.     Coinciding with or sometime after the sale of Blitz U.S.A., Inc. to Kinderhook Industries, LLC and members of Blitz U.S.A.'s senior management, a complicated and opaque corporate ownership structure was created by the new owners consisting of the defendant Delaware limited liability companies, corporations, and limited partnerships, Blitz Acquisition, LLC, Blitz RE Holdings, LLC, Blitz Acquisition

20

Holdings, Inc., LAM 2011 Holdings, LLC (f/k/a Blitz Holdings, LLC), Kinderhook Capital Fund II, LP, and Kinderhook Industries, LLC.

83. At the time the Elmburg family sold Blitz U.S.A., Inc. to Defendant Kinderhook Industries, LLC, Kinderhook knew that Blitz had been sued by numerous individuals who claimed they had received devastating burn injuries and/or deaths in explosions of Blitz gas cans, and Kinderhook knew that there were numerous such lawsuits pending and that there was a great likelihood that there would be many more suits filed as a result of gas cans already sold. In spite of this knowledge, Kinderhook on its own and through its sham subsidiaries proceeded with the purchase under a scheme to immediately and in the future remove substantial valuable assets into newly formed entities for the purpose of preventing injured plaintiffs from recovering on their claims.

84. Defendants Kinderhook Industries, LLC, LAM 2011 Holdings, LLC (f/k/a Blitz Holdings, LLC) and Kinderhook Capital Fund, II, LP have used their control to cause Defendant Blitz U.S.A., Inc. and their other subsidiary entities listed above to make transfers of assets and incur obligations to and between the various entities and/or to other unknown companies and individuals in order to leave Blitz U.S.A., Inc. undercapitalized and insolvent and with actual intent to defraud Plaintiff and other creditors.

85. Defendant F3 Brands, LLC was incorporated in Delaware on May 17, 2011 and was identified by Blitz U.S.A., Inc. on October 4, 2011 as a wholly owned subsidiary of Blitz U.S.A., Inc.

21

86.     Prior to October 4, 2011, Blitz identified F3 Brands, LLC as a wholly owned subsidiary of Blitz Acquisition Holdings, Inc.

87.     On October 4, 2011, Blitz U.S.A., Inc. disclosed that it has transferred assets to Blitz Acquisition, LLC for the purpose of Blitz Acquisition, LLC's purchase of a Canadian company identified by Blitz as "Reliance Holdings."

88.     Prior to October 4, 2011, Blitz identified "Reliance Holdings" as a wholly owned subsidiary of Blitz Acquisition Holdings, Inc.

89.     Since May 17, 2011, substantial assets consisting of Blitz U.S.A., Inc.'s non-gas can product lines, manufacturing equipment and other assets have been diverted and transferred to F3 Brands, LLC.    Additionally, Blitz U.S.A., Inc. has transferred assets to either Blitz Acquisition Holdings, Inc. and/or Blitz Acquisition, LLC, which assets were used to purchase "Reliance Holdings."    Blitz U.S.A., Inc. has fraudulently transferred assets to its owners and directors in the form of excessive executive compensation or other payments in preference over its creditors. All of these transfers have been made with the actual intent to hinder, delay or defraud Plaintiff and/or other creditors of Blitz.

90.     Plaintiff believes that there have been additional fraudulent transfers of assets from and/or obligations incurred by Defendant Blitz U.S.A., Inc. to its parents, insiders, and other transferees, the details of which are yet unknown, which were made with actual intent to hinder, delay or defraud Plaintiff and/or other creditors of Blitz.

91.     These transfers of assets from and/or obligations incurred by Defendant Blitz U.S.A., Inc. have left it with a negative net worth and rendered it grossly undercapitalized, insolvent and unable to satisfy Plaintiff's claim.

92.     Pursuant to Fla. Stat. Ann. § 726.108, Plaintiff seeks one or more of the following forms of relief against Defendants and/or other transferees of assets from Blitz U.S.A., Inc.:

a.     Avoidance of the transfers and obligations to the extent necessary to satisfy Plaintiff's claim;

b.     Attachment or other provisional remedy against the assets transferred or other property of the transferee(s);

c.     An injunction against further dispositions by the Defendants or transferee(s) of assets transferred or of other property;

d.     Appointment of a receiver to take charge of the assets transferred or of other property of the transferee(s); and/or

e.     Any other relief the circumstances may require.

### COUNT VI – STRICT LIABILITY
### AS TO WAL-MART ONLY

93.     Plaintiff re-alleges and incorporates the allegations of paragraphs 1-26 as if fully pleaded herein.

94.     Wal-Mart marketed, distributed and sold the can which was defectively designed and unreasonably dangerous for its anticipated, intended and foreseeable use in the following ways:

A.     Wal-Mart marketed and sold the can without a flame arrestor and/or other safety devices;

B.     Wal-Mart participated in and impacted the design of Blitz's can, and in particular the design of the closures of the can, and knew that it had the ability to impact the design of Blitz's can;

C. Wal-Mart failed to provide adequate warnings to Plaintiff about the inherent dangers involved in the use of the can it marketed and sold;

D. Wal-Mart sold Blitz gas cans to the public that contained manufacturing defects;

E. Wal-Mart knew or should have known at the time it supplied the can that the can, as sold, was defectively designed because it posed a risk of flammable vapor ignition, flashback and explosion to users beyond that understood or contemplated by the average reasonable consumer/purchaser, and the risks associated with this design outweighed its utility;

F. Wal-Mart knew or should have known of other available gas cans that were available to safeguard consumers from the foreseeable dangers associated with gasoline use and to significantly reduce and/or eliminate the risk of flammable vapor ignition, and Wal-Mart failed to offer such cans for sale, and instead sold the defective Blitz can to Plaintiff's sister, and knew of incidents where Blitz gasoline cans such as the one Wal-Mart sold to Plaintiff's sister had exploded, causing burn injuries;

G. Wal-Mart knew or should have known that consumers would use gas cans to fill their lawnmowers with gasoline, creating an unreasonable and unexpected hazard of vapor ignition and resulting fire, without appropriate design features to prevent flashback;

H. With the knowledge that plastic gas cans not equipped with flame arrestors were exploding, Wal-Mart sought on at least two occasions to

24

significantly increase sales to customers and decrease its product cost from Blitz as opposed to insisting on a fix to prevent its customers from suffering severe burn injuries and even dying.

95.     Wal-Mart had actual knowledge of the defects in the can and other Blitz cans as alleged above, Wal-Mart had actually joked about the dangers of the can at its management and supplier meetings, and Wal-Mart put the can into the stream of commerce, acting with complete indifference to, and in willful, conscious and reckless disregard for the safety of Plaintiff and other foreseeable plaintiffs. After discovery is conducted, Plaintiff reserves the right to seek leave of the Court to amend his Complaint to seek punitive damages against Wal-Mart.

96.     Wal-Mart had actual or constructive knowledge of the defective conditions of the subjects gas can alleged above at the time it sold the can to Plaintiff's sister.

97.     As a direct and proximate result of one or more of Wal-Mart's acts or omissions as described herein and as a direct and proximate result of the gas can's defective design, Wal-Mart is liable to Plaintiff pursuant to Section 402A of the Restatement (Second) of Torts (1965).

## COUNT VII – NEGLIGENCE
## AS TO WAL-MART ONLY

98.     Plaintiff re-alleges and incorporates the allegations of paragraphs 1-26 as if fully pleaded herein.

99.     Wal-Mart owed consumers and/or foreseeable users, including Plaintiff, the duty of reasonable care in its marketing, distribution and sale of the can.

100.    As a direct and proximate result of Wal-Mart's negligence, the can was marketed, distributed and sold in a defective condition, and it was unreasonably

25

dangerous when used as intended and when put to reasonably anticipated and/or foreseeable use by persons such as Plaintiff.

101.    Plaintiff's injuries, and the manner in which they occurred, were reasonably foreseeable to Wal-Mart, which knew or should have known that individuals such as Plaintiff were being severely burned when encountering Blitz gas containers, including the subject can.

102.    As a direct and proximate result of one or more of Wal-Mart's acts or omissions as described herein, Plaintiff suffered the injuries and harms outlined in this Complaint.

## COUNT VIII – BREACH OF WARRANTY
## AS TO WAL-MART ONLY

103.    Plaintiff re-alleges and incorporates the allegations of paragraphs 1-26 as if fully pleaded herein.

104.    Wal-Mart is a merchant of gas cans.

105.    In selling and placing the gas can into the stream of commerce, Wal-Mart impliedly warranted that the gas can was merchantable and fit for the ordinary, anticipated and foreseeable purposes for which it was intended to be used.

106.    Wal-Mart breached said implied warranty in one or more of the following respects, among others:

   A. Wal-Mart sold a gas can without a flame arrestor and/or other safety devices;

   B. Wal-Mart participated in and had impacted the design of Blitz's gas cans;

   C. Wal-Mart failed to provide adequate warnings about the inherent dangers involved in the use of gas containers it sold;

D. Wal-Mart sold Blitz gas cans that contained manufacturing defects;

E. Wal-Mart knew or should have known at the time it supplied the gas can that the can, as sold, was defectively designed because it posed a risk of flammable vapor ignition, flashback and explosion to users beyond that understood or contemplated by the average reasonable consumer/purchaser, and the risks associated with this design outweighed its utility;

F. Wal-Mart knew or should have known of other available gas cans that were designed to significantly reduce and/or eliminate the risk of flammable vapor ignition, and failed to offer such cans for sale and instead sold the defective subject gas can to Plaintiff's sister;

G. Wal-Mart knew or should have known that consumers use gas cans to fuel lawnmowers, creating an unreasonable and unexpected hazard of vapor ignition and resulting fire, without appropriate design features to prevent flashback.

107.    As a direct and proximate result of Wal-Mart's breach of warranty, Plaintiff suffered the injuries and harms outlined in this Complaint.

108.    As such, Wal-Mart is liable pursuant to Florida Revised Statute § 672.314.

## COUNT IX – MANUFACTURING DEFECTS
## AS TO DISCOVERY PLASTICS ONLY

109.    Plaintiff re-alleges and incorporates the allegations of paragraphs 1-26 as if fully pleaded herein.

110.   At all relevant times, Discovery Plastics was engaged in the business of manufacturing component parts of portable gas cans, including the Blitz gas can in the present case, which were to be sold to consumers within the stream of commerce.

111.   Discovery Plastics expected the component parts it manufactured to ultimately reach the residential consumer and/or users, such as Plaintiff, without substantial change in the condition in which they were originally manufactured.  The component parts manufactured by Discovery Plastics, as incorporated into the gas can by Blitz, did in fact reach Plaintiff without a substantial change in the condition in which they were originally manufactured by Discovery Plastics and unexpectedly failed under ordinary and foreseeable use due to defective manufacturing.

112.   At the time the component parts left Discovery Plastics' control, and at all times complained of, the yellow spout cap manufactured by Discovery Plastics for the Blitz self venting can, which was incorporated into the gas can in the present case, suffered from manufacturing defects which caused and/or contributed to cause the cap to crack and/or to fall off and be lost and was made with defective processes and/or molds, resulting in an open or improperly sealed can which increased the likelihood of an explosion.

113.   Discovery Plastics utilized defective manufacturing processes and/or molds in manufacturing the cap and failed to implement and/or monitor its processes to ensure it was producing a quality product of uniform size.

114.   The component parts manufactured by Discovery Plastics for the Blitz self venting can were defective because they deviated in a material way from the

manufacturer's specifications or from otherwise identical units manufactured to the same specifications.

115.    As a direct and proximate result of one or more of Discovery Plastics' acts or omissions as described herein and as a direct and proximate result of the gas can's defective design, Discovery Plastics is liable to Plaintiff pursuant to Section 402A of the Restatement (Second) of Torts (1965).

## COUNT X - NEGLIGENCE
## AS TO DISCOVERY PLASTICS ONLY

116.    Plaintiff re-alleges and incorporates the allegations of paragraphs 1-26 as if fully pleaded herein.

117.    Discovery Plastics owed consumers and/or foreseeable users, including Plaintiff, the duty of reasonable care in its manufacture and production of its component parts for gas cans.

118.    Discovery Plastics ignored and/or breached that duty by its following negligent acts and/or omissions:

  A. Manufactured defective component parts for Blitz gas cans, including the yellow cap that fit on the end of the self venting spout of Blitz's gas cans;

  B. Placed into the stream of commerce component parts that contained manufacturing defects;

  C. Placed into the stream of commerce component parts that were unfit for their intended use;

  D. Placed into the stream of commerce component parts likely to cause injury in their ordinary use;

E. Failed to adequately test its caps for uniformity and/or compliance with quality programs;

F. Discovery Plastics knew or should have known that there were manufacturing defects in its component parts that caused the cap to crack and/or to fall off and be lost or allowed users to fail to appropriately secure it, resulting in an open or improperly sealed can which increased the likelihood of an explosion.

119.   As a direct and proximate result of one or more of Discovery Plastics' acts or omissions as described herein, Plaintiff suffered the injuries and harms outlined in this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows on all Counts:

1. Past medical expenses in an amount according to proof;

2. Future medical expenses in an amount according to proof;

3. Lost income, past and future, in an amount according to proof;

4. Loss of wage earning capacity in an amount according to proof;

5. Pain, suffering, mental anguish, inconvenience and loss of capacity for the enjoyment of life in an amount according to proof;

6. Costs and expenses;

7. For such other relief as the court deems just and proper; and

8. Plaintiff reserves the right to amend his complaint to request punitive damages.

## TRIAL BY JURY

Pursuant to FRCP 38, Plaintiff hereby demands a Jury Trial.

Respectfully submitted, this the ___9th___ day of November 2011.

K.C. Bouchillon
Lilly, O'Toole & Brown, LLP
P.O. Box 50
Bartow, Florida 33831
Phone (863) 533-5525
Fax (863) 533-0505
kc@loblawyers.com